```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - - -x

In re:                                 :

ARMAND and LINDA CORTELLESSO           :    BK No. 09-11403
            Debtors                         Chapter 7

- - - - - - - - - - - - - - - - - - -x


CHRISTOPHER and BONNIE BENSON          :
            Plaintiffs

v.                                     :    A.P. No. 09-1059

ARMAND CORTELLESSO                     :
            Defendant
- - - - - - - - - - - - - - - - - - -x
```

## DECISION AND ORDER DISMISSING § 727 COMPLAINT

APPEARANCES:

    Thomas P. Quinn, Esq.
    Stefanie D. Howell, Esq.
    Attorneys for Debtor/Defendant
    McLaughlin & Quinn, LLC
    148 West River Street
    Providence, Rhode Island 02904

    Kevin M. Daley, Esq.
    Attorney for Plaintiffs
    Daley & Orton
    300 Jefferson Boulevard, Suite 105
    Warwick, Rhode Island 02888

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 09-11403; A.P. No. 09-1059

Heard on Counts II and III of the Plaintiffs' Third Amended Complaint, pursuant to 11 U.S.C. §§ 727(a)(3)[1] and/or (a)(4), to deny the discharge of Debtor/Defendant ("Cortellesso"). After an unnecessarily long pre-trial exercise in delay, an equally overdone six day trial, and based on the credibility of witnesses, the documentary evidence, and the written and oral submissions, Judgment for Cortellesso should enter as to the § 727 part of the Complaint.

## ISSUES, TRAVEL AND BACKGROUND

In April 2009, Armand and Linda Cortellesso filed a skeletal joint Chapter 7 petition, with full statements and schedules filed on April 29, 2009. In July 2009, seven Complaints were filed against Cortellesso under § 523(a) objecting to the dischargeability of certain individual debts, and under § 727 seeking denial of Cortellesso's discharge. Because all the Adversary Proceedings share identical § 727 allegations, in December 2009 the parties were ordered to proceed on the § 727 claims, and placed the § 523 matters on hold, pending a disposition of the objection to discharge issue. This A.P. is the lead case and will be dispositive of all the other § 727 complaints.

---

[1] This Count dealing with § 727(a)(3) was added by the Third Amended Complaint filed in November 2010.

1

BK No. 09-11403; A.P. No. 09-1059

The Plaintiffs allege that Cortellesso violated § 727(a)(4), in that "the debtor knowingly and fraudulently, in or in connection with a case ... [made] ... a false oath or account." Joint Pre-Trial Order ("JPTO"), § V.A.1. Specifically, in Count II of their Third Amended Complaint, Plaintiffs allege: (1) that Cortellesso's "Schedules and Statement of Affairs ... contained false information and omissions with regard his financial affairs ... and [that he] made [a] false oath," ¶20, in that he failed to disclose "that he was the owner of an RV worth in excess of $300,000." ¶21; (2) that Cortellesso gave "testimony, during the Meeting of creditors, inconsistent with [his] 2008 Deposition testimony" and with information on his Statements and Schedules concerning the RV, ¶24; and (3) that Cortellesso testified falsely regarding financial arrangements he had with Omega Financial Corporation ("Omega"). ¶¶25-30.  Count III of the Complaint alleges that Cortellesso violated § 727(a)(3) by "destroy[ing] the piece of paper" on which he kept track of the funds that had been withdrawn, pre-petition, from an account under his control.

## DISCUSSION

While, in hindsight, most of the allegations could (and should) have been disposed of in summary fashion, because much of the heavy lifting has already been done in considering the evidence

2

BK No. 09-11403; A.P. No. 09-1059

and the arguments, we might as well address separately the allegations relative to each count.

**A.   Count II – Section 727(a)(4)**

Section 727 provides that:

(a) the court shall grant the debtor a discharge, unless–
  (4) the debtor knowingly and fraudulently, in or in connection with the case–
    (A) made a false oath or account.[2]

"Under § 727(a)(4)(A) the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact," *Boroff v. Tully (In re Tully)*, 818 F.2d 106,110 (1st Cir. 1987), and "[t]he burden of proof rests with" the party opposing discharge. Id. (Citations and internal quotations omitted). *See also, Fed. R. Bankr. P. 4005* ("At the trial of a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."). "Matters are material if pertinent to the discovery of assets, including the history of a bankrupt's financial transactions." *In re Mascolo*, 505 F.2d 274, 277 (1st Cir. 1974). *See also, In re Carp*, 340 F.3d 15, 26 (1st Cir. 2003) (innocent failure to list a particular "contingent interest as property of the bankruptcy estate ... alone would not be enough to trigger section 727(a)(4)"), and inferential evidence *possibly* evidencing the grounds for denial of discharge is "constru[ed] ...

---

[2] Plaintiffs' Complaint references § 727(a)(4) without specifying under which provision of (a)(4) they were proceeding. However, the factual allegations of the Complaint as well as the evidence presented, relate only to § 727(a)(4)(A).

3

liberally in favor of the debtor." *In re Watman*, 458 F.3d 26,34 (1st Cir. 2006). Mistakes "attributable to slipshod reporting rather than to intentional fraud" are not sufficient to deny discharge." *Lundregan v. Stevens and Ryan (In re Stevens),* 343 B.R. 11,17 (D. Mass. 2006). Even uncorrected misinformation "creating a false impression" is not enough unless the plaintiff proves that the debtor made them "knowingly and fraudulently." Id.

At this trial the Plaintiffs focused most heavily on two areas of inquiry, (i) Cortellesso's dealings with Omega Financial ("Omega"); and (ii) Cortellesso's alleged possession and/or ownership of a recreational vehicle ("RV") that was not disclosed in his bankruptcy petition.

Plaintiffs contend that Cortellesso had a pre-petition agreement with Omega that he (Cortellesso) would receive the net profits from the completion of four condominium units[3] upon which Omega had foreclosed pre-bankruptcy. The uncontradicted evidence is that Omega advanced the funds necessary to finish and prepare each of the "Newbury Village" units for sale, that Cortellesso supervised the completion, and that he would receive the amount remaining after Omega's pre- and post-foreclosure expenditures. The Plaintiffs contend that the agreement was made before the

---

[3] The units in question were owned by one of Cortellesso's limited liability companies ("LLC") and were referred to throughout the trial as "Newbury Village." Apparently, it was Cortellesso's practice to form a separate LLC for each of his various construction projects.

4

BK No. 09-11403; A.P. No. 09-1059

petition, i.e., before April 13, 2009, and was not disclosed in any of the filings. In support of their position, the Plaintiffs called two witnesses, Armand Cortellesso and Mark Marcus, CEO of Omega.

Marcus testified concerning Omega's long standing business relationship with Cortelllesso, and specifically as to the foreclosure in February 2009 of the partially completed Newbury Village units. He stated that Omega was anxious to dispose of these as quickly as possible,[4] after becoming the owner at foreclosure. He (Marcus) also stated that in the hope of salvaging future business with Omega, Cortellesso agreed to oversee the completion of the exterior elements of the units[5] without compensation, and that thereafter he would start getting paid for his services. Various invoices showed billings related to limited work done on the units in March and early April 2009. E.g., Exs. E at 9, G at 7; H at 6.[6] Marcus testified that, thereafter, he and Cortellesso entered into the now hotly disputed verbal arrangement to get that done, i.e., that Omega would pay the cost to complete

---

[4] Marcus said Omega's preference was to quickly sell the units in bulk to a developer/contractor that could take over the entire project, but when no such buyer came forward at the foreclosure sale, Omega purchased the units with a "credit bid" based on its mortgages.

[5] According to Cortellesso, the condominium association was also pressing this point.

[6] Plaintiffs' Exhibits are designated by capital letters, Defendant's by Arabic numbers.

5

BK No. 09-11403; A.P. No. 09-1059

the units, and upon each sale Omega would recoup all its principal, interest and post-foreclosure costs of completion. Then, for his management services Cortellesso would retain the "net proceeds." When asked by the Court why the agreement was not in writing, Marcus replied simply that for many years "this was just the way they always did business." Marcus also volunteered that if Cortellesso failed to perform, their business relationship would be history, and that the "net proceeds" part of the deal was agreed to in early or mid-May, 2009. He stated that at the trial his recollection of the time of the agreement was confirmed after reviewing invoices showing Omega's disbursements for interior work, i.e., finish items such as kitchens, carpets, flooring, plumbing, and HVAC all show billings and disbursements, all dated well after the petition was filed. Exs. E, G, H.

Plaintiffs concentrate on a narrow pre-petition time, arguing at length that Marcus contradicted his October 4, 2010 deposition testimony. Ex. HHH. Plaintiffs' Post Trial Memorandum at 9-10. Marcus in fact did answer "yes" to a question by Plaintiffs' counsel, "that the date of the agreement was, let's say April of 2009, April 1 of 2009." Ex. HHH at 134. However, that exchange was similar to the question and answer pattern used persistently by Plaintiffs' counsel, where Marcus testified that he could not recall an exact date, Ex. HHH at 44, whereupon Plaintiffs' counsel repeatedly suggested that the witness "assum[e] this date is correct," Ex. HHH at 45,82,83, and then elicited the answer he

6

BK No. 09-11403; A.P. No. 09-1059

sought, based on an accumulation of assumed facts and dates supplied by counsel in previous hypothetical questions.[7] One of the responses whimsically (and appropriately) incorporated in his response – "I [Marcus] would assume that's correct." Ex. HHH at 44-45. At trial, Marcus did concede a discrepancy, and in response to the Court's questions explained that the difference between his deposition and trial testimony was based on his review of the Omega disbursements between the time of the deposition and the trial.[8] This is not an unusual scenario, and I find the substance of Marcus's explanation to be reasonable, Plaintiffs' counsel's arguments to the contrary notwithstanding. Based on all the evidence, the Court finds that Marcus provided a credible basis for the position that the agreement regarding "net proceeds" was made after April 13, 2009, and not made before the case was filed.

The second point made by the Plaintiffs involved an expensive recreational vehicle, a 2004 Beaver mobile home. Plaintiffs insist that Cortellesso retained "some interest (even if it was just "possessory") in the 2004 Beaver RV within the two year period prior to April 13, 2009." Plaintiffs Memorandum at 2. Without ever explaining the nature of the Debtor's alleged "interest" in

---

[7] Such cross examination tactics, which have always been viewed with disfavor by this Court, are likewise rejected here because they are merely transparent attempts to add spin to a record that does not exist.

[8] "Those were just generated this morning by our bookkeeper, so I haven't looked through them. Ex. HHH at 41.

BK No. 09-11403; A.P. No. 09-1059

the RV, Plaintiffs pressed this assertion solely on the testimony of one Masad Shakoori. Shakoori, an amiable and talkative contractor who "likes RVs," testified that he frequently drove by the Cortellesso property and "noticed a high end RV" parked there during the Spring, 2009. Plaintiffs' Memorandum at 2. Shakoori described the vehicle as "that camper" describing it as a fancy motor home with a three color paint scheme and a satellite dish on the roof. Shakoori was unable to identify the year, make or model of the vehicle. The uncontradicted evidence concerning the RV is that: (i) Cortellesso owned the vehicle,[9] (ii) Cortellesso owed approximately $374,000 to Raven Construction Company, which is owned by Norman Marsocci, (iii) in the Summer of 2006 Cortellesso and Marsocci agreed upon a method to pay the debt owed to Raven Construction, (iv) Cortellesso transferred title to the vehicle, plus a check for $74,000 to Marsocci in full payment of that debt,[10] (v) Marsocci removed the vehicle from the Cortellesso property in February 2007, and (vi) Marsocci has retained ownership, possession and control of the vehicle since that date.[11]

While Mr. Shakoori's testimony may have established that he liked RVs and that he perhaps didn't like Armand Cortellesso, it

---

[9] Ex. UU.

[10] Ex. YY and Ex. 4.

[11] The Montana certificate of title for the vehicle dated February 26, 2007, Ex. 28, is in the name of one of Marsocci's corporations.

8

didn't come close to establishing anything relevant to this dispute. Despite the nefarious motives Plaintiffs ascribe to the statements and actions concerning the RV, there is no credible evidence that Cortellesso had any interest in the vehicle at the time of filing. In addition, Plaintiffs have failed to establish that Cortellesso made a false oath in connection with this vehicle.

Finally, regarding false oath allegations, Plaintiffs contend that Cortellesso failed to disclose the foreclosure of various entities in which he was the sole stockholder and/or member. Plaintiffs' Post-Trial Memorandum at 7. Specifically, Plaintiffs allege that Cortellesso intentionally omitted the Omega foreclosures in his Statement of Financial Affairs. Cortellesso's ownership of those entities, however, is listed in Schedule B, and, as Cortellesso points out in his Post-Trial Memorandum at 18, under Rhode Island law "a membership interest in an LLC is personal property. A member has no interest in specific limited liability company property." R.I. Gen. L. § 7-16-34. Failure to list the foreclosure of real property in one portion of the petition, when the Debtor's personal property ownership interest in the LLCs was fully and correctly disclosed in another portion, does not constitute or rise to a knowing false oath sufficient to deny discharge. *See In re Stevens, supra*.

**B. COUNT III - SECTION 727(a)(3)**

Section 727 provides that:

(a) the court shall grant the debtor a discharge, unless–

9

BK No. 09-11403; A.P. No. 09-1059

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case–

As to this issue, Plaintiffs argue that, pre-bankruptcy, Cortellesso withdrew $53,000 from his bank accounts just prior to the issuance of a state court restraining order freezing his assets. Further, Plaintiffs contend that Cortellesso kept track of the use of these funds on a single sheet of paper, which he subsequently destroyed. In their Amended Complaint, ¶¶37-38, in the pre-trial order, § II ¶36, and at trial Plaintiffs narrowed their focus to the *destruction* of the paper, and contend that this action alone violates § 727(a)(3). And then, in their post-trial memorandum the Plaintiffs again shift gears away from "the paper," and argue generally that the Debtor had undisclosed cash on hand at the time of the filing. Cortellesso points out that Plaintiffs have changed course "[a]s they did at trial ... [and have] ... completely abandoned Count III." Defendant's Reply Memorandum at 3. While Cortellesso's observation is probably accurate, the Court will nevertheless address the merits of the narrowed and shifting issues as Plaintiffs have framed and presented them.

To begin with, the statute encompasses wider considerations than the destruction of a single sheet of paper as a ground for denial of discharge. Section 727(a)(3) looks to a range of information "from which the debtor's financial condition or

10

BK No. 09-11403; A.P. No. 09-1059

business transactions might be ascertained." Plaintiffs' Exhibit List in the JPTO identifies Exhibits A through triple I, many of those exhibits are multi-paged, and Plaintiffs have had access to each document. Every Exhibit involves either Cortellesso or his wife.[12] Plaintiffs have made no cogent argument or offered any persuasive reason as to how or why a single missing sheet of paper interfered with their ability to ascertain Cortellesso's business or financial affairs.  In short, the Plaintiffs have failed to establish any relevant § 727 elements.

## CONCLUSION

At the pre-trial proceedings, during the hearing, and post trial, Plaintiffs' case has been long on rhetorical flourishes about Cortellesso and, as they see it, his questionable conduct. When called upon to get to specific, material issues, Plaintiffs promised that they would, but, like the horizon, they remained in the distance and never materialized.  Much of this trial bantering was probably the result of the Court's overindulgence of Plaintiffs' counsel's litigation style, which consisted of self-serving pre-trial and extra-judicial rhetoric, unsupported by credible evidence, and the repeated use of hypothetical questions

---

[12] Plaintiffs introduced additional Exhibits, through triple P, at trial.  Many of those listed on the JPTO or presented at trial were introduced as full exhibits; some were admitted for identification only; others were stricken.  Although listed on the JPTO and moved as an Exhibit for identification, Plaintiffs' Exhibit AAA was never produced.  Therefore, Exhibit AAA is not a part of this record for any purpose.

BK No. 09-11403; A.P. No. 09-1059

intended to provide a "gotcha" argument intended for use when the record is closed. Nevertheless, even with all the excessive latitude, the Plaintiffs never came close to establishing a case as to any material fact(s) required to deny discharge. For the reasons expressed here, Judgment is entered for Defendant as to Counts II and III of Plaintiffs' Complaint.

Enter Judgment in accordance with this Order of the Court.

Dated at Providence, Rhode Island, this 14th day of June, 2011.

Arthur N. Votolato
U.S. Bankruptcy Court

Entered on docket: 6/14/11