```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x
In re:                              :

ARMAND and LINDA CORTELLESSO        :   BK No. 09-11403
            Debtors                         Chapter 7

- - - - - - - - - - - - - - - - - -x
CHRISTOPHER and BONNIE BENSON       :
            Plaintiffs

v.                                  :   A.P. No. 09-1059

ARMAND CORTELLESSO                  :
            Defendant
- - - - - - - - - - - - - - - - - -x
```

## DECISION AND ORDER DISMISSING § 523 COMPLAINTS AND IMPOSING SANCTIONS

APPEARANCES:

    Thomas P. Quinn, Esq.
    Stefanie D. Howell, Esq.
    Attorneys for Debtor/Defendant
    McLAUGHLIN & QUINN, LLC
    148 West River Street
    Providence, Rhode Island 02904

    Kevin M. Daley, Esq.
    Attorney for Plaintiffs
    DALEY & ORTON
    300 Jefferson Boulevard, Suite 105
    Warwick, Rhode Island 02888

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 09-11403; A.P. No. 09-1059

Heard on the Debtor/Defendant's ("Cortellesso") Motion to Dismiss all of the Plaintiffs' pending Adversary Proceedings, for failure to prosecute their claims[1] and for sanctions.[2] These motions are the long overdue endings to a painfully dragged out discovery and pre-trial exercise in delay, an overdone six day trial resulting in judgment for Cortellesso as to the § 727 counts of the complaints, and finally, an equally frustrating delaying act by Plaintiffs' counsel regarding dismissal of the Adversary Proceedings.

## ISSUES, TRAVEL, AND BACKGROUND

In April 2009, Armand and Linda Cortellesso filed a joint Chapter 7 petition, and submitted their schedules and statement of affairs on April 29, 2009. In July 2009, seven Complaints were filed: (1) pursuant to § 727 seeking denial of discharge, and (2) under § 523(a) objecting to the dischargeability of certain of Armand Cortellesso's individual debts. In the interest of judicial economy, the projected cost of possibly eight separate trials, and because the Adversary Proceedings contained essentially identical allegations, the parties were ordered to proceed on the § 727 claims, while the § 523 counts were held in abeyance pending disposition of the more encompassing §727 issue(s). This A.P.

---

[1] See Fed. R. Bankr. P. 7041.

[2] 28 U.S.C. § 1927 and Fed. R. Bankr. P. 9011.

1

BK No. 09-11403; A.P. No. 09-1059 (Benson), the lead case, and all of the § 727 complaints were disposed of in a Decision and Order dated June 14, 2011. In that Decision I concluded that "the Plaintiffs never came close to establishing a case as to any material fact(s) required to deny discharge." There was no appeal, and that decision is a final order.

Thereafter, on August 9, 2011, at a status conference regarding the disposition of the § 523 counts, the parties estimated an additional 90 days for discovery, and represented that a new discovery plan would be provided. The Plaintiffs designated Zeppetelle v. Cortessesso, A.P. No. 09-1065, to be tried first, and filed a joint discovery plan. On September 2, 2011, based on the parties' representations, a scheduling order was entered requiring that discovery be completed by October 31, 2011, and that a Joint Pre-Trial Order be filed by November 15, 2011. Consistent with his prior performance in this case, Daley again relapsed into deadline default mode, and on October 4, 2011, Cortellesso filed a motion to compel the Plaintiffs to comply with the discovery plan and scheduling order. After three weeks of inaction, on October 25, 2011, and again missing the filing deadline, Daley responded by objecting to the motion to compel, on the ground that "these particular Plaintiffs do not wish to pursue their claims against [Cortellesso] any longer." On November 9, 2011, Cortellesso filed

2

BK No. 09-11403; A.P. No. 09-1059

the instant Motion to Dismiss the pending Adversary Proceedings and for sanctions. That motion was heard on January 12, 2012, taken under advisement, and is the subject of this decision.

In requesting dismissal, Cortellesso stresses Daley's[3] delaying tactics generally, his failure to adhere to the scheduling order and/or to discovery deadlines, and complains that he "has been forced to endure two and a half years of litigation" during which he "has incurred legal fees in excess of $150,000," as well as unnecessary delay in obtaining a discharge. Cortellesso views Daley's tactics as "harassment." In response, Daley states that after the August hearing he "learned that the Zeppetelles could not afford to continue" with the § 523 litigation, and so informed Cortellesso's counsel, then complains that Cortellesso "would **NOT** sign a dismissal stipulation until it has been ascertained whether the remaining Plaintiffs intend to more forward with their cases." Plaintiffs' Objection to Motion to Dismiss and for Sanctions, at 1. (Emphasis in the original). There is no indication as to when each of the Plaintiffs informed Daley of their decision not to proceed. At the January 12, 2012 hearing on this motion, Daley finally announced that all of the Plaintiffs were finished, i.e., not willing to proceed with their claims. Based on the entire record

---

[3] References to "the Plaintiffs" includes all the parties represented by Daley in the § 727 and § 523 matters. Their complaints are essentially identical.

3

BK No. 09-11403; A.P. No. 09-1059

in the case, Cortellesso's Motion to Dismiss is **GRANTED**, and the pending complaints are **DISMISSED**.

There remains the issue of sanctions:

> Any attorney ... admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.  28 U.S.C. § 1927.

This provision applies to proceedings in the bankruptcy court. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 105 (3rd Cir. 2008). "Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so." *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990). Also, the "conduct must be more than mere negligence, inadvertence, or incompetence" and the Court "should apply an objective standard" in judging the actions. *Id*.

The subject of Mr. Daley's conduct is not about an isolated or occasional incident.  Quite to the contrary, from the beginning, the record in the case is replete with examples of why Daley's conduct easily falls within the prohibited standard, and the result here should come as little surprise to him.  The Court is also mindful that "sanctions should not be imposed to chill an attorney's enthusiasm, creativity or zealous advocacy." *Cruz v. Savage, supra* at 634.  Throughout the § 727 trial on the merits, the Court's repeated urging, admonitions, and efforts to get Daley to make his point and to move on were all ignored, and we heard

4

BK No. 09-11403; A.P. No. 09-1059

nothing in mitigation of the Court's criticism(s) of Daley's conduct, except more of his familiar but unsupported rhetoric.

At the August 9 hearing the parties were supposed to inform the Court of the future of these § 523 cases, and they agreed to designate a different A.P. as the first one to be tried (Zeppetelle, A.P. No. 09-1065). The parties submitted a discovery plan and a scheduling order based on Daley's representation that Zeppetelle would proceed on schedule. When discovery did not proceed as planned, on October 4, 2011, Cortellesso filed a motion to compel. Daley's inappropriate and disingenuous objection (Doc. Nos. 166, 167) to that motion states that on October 5, 2011, he communicated to Cortellesso's counsel that Zeppetelle was "no longer pursuing" the § 523 claim, but he was not willing to file a dismissal based on Cortellesso's question whether the other Plaintiffs would go forward with their complaints, or whether they too would be dropping their suits in similar piecemeal fashion. Twenty days later Cortellesso still had no answer, and the instant motion to dismiss and for sanctions was filed on November 9, 2011.

The contradictions and inconsistences between Daley's statements at the August 9 scheduling hearing and the August 12 submission of the joint discovery plan, versus the communications between counsel that started on October 5, are disturbing. On August 12, Daley was touting Zeppetelle as the first A.P. that

5

BK No. 09-11403; A.P. No. 09-1059

would be tried; less than two months later he was informing the Debtor that the Zeppetelles would not be going forward with their claim, and at the January 12 hearing, Daley finally advised that the remaining plaintiffs were dropping their Adversary Proceedings, as well.  The common refrain was that the Plaintiffs could no longer fund the litigation.  But Daley has never said what, if anything, changed between August 9, 2011, when he was assuring the Court of his and his clients' intentions to press their claims, and the first indications, on October 5, that the same matters would not go forward, then finally to the evaporation of all this litigation on January 12, 2012.  It was only in response to Cortellesso's motions to compel, and then to dismiss, that Daley finally conceded that none of his clients were willing to continue to chase Cortellesso through the court system.  The unexplained inferences here are that Daley was not being candid with the Court or the Debtor.

The June 14 decision established that the § 727 claims were baseless, and that it was time for Daley to "fish or cut bait" regarding the § 523 claims. Instead, Daley persisted in his pattern of delay by continuing to represent that the § 523 matters were on track for hearing, when they clearly were not.[4]

---

[4] Although this statement is made with the benefit of hindsight, a review of Daley's filings in this case since June 14, 2011, satisfy this Court that Daley knew or should have known that the remaining matters would not go forward, thus "multipl[ing] the

6

BK No. 09-11403; A.P. No. 09-1059

Based on this unpleasant discussion, but primarily on Daley's (at best) quirky behavior throughout these proceedings, the conclusion is inescapable that he has unreasonably and vexatiously caused the expenditure of time and resources by others, to the tune of countless hours and thousands of dollars ($150,000 incurred by Cortellesso alone), much of it attributable to Mr. Daley's misguided decision to litigate these matters as he has.

"The purpose of sanctions is to prevent unreasonable and costly delay and to foster the expeditious management of litigation," *In re Lincoln North Assocs.*, 163 B.R. 403, 408 (Bankr. D. Mass. 1993). With the hope and expectation that a money sanction will deter Mr. Daley from future, similar performances in this and other courts (my efforts to dissuade him away from such conduct were all unsuccessful), a useful byproduct would be to deter others from engaging in similar conduct.

Having said all this, and having in mind the entire record in the case, a sanction in the amount of $7,500, payable within sixty days, is imposed against Kevin Daley, Esq., for multiple and repeated violations of 28 U.S.C. § 1927.

Enter.

　　　　　　　　　　　　　　　　　　　　　　　Arthur N. Votolato
　　　　　　　　　　　　　　　　　　　　　　　U.S. Bankruptcy Court

Entered on docket: 3/8/12

---

proceedings" and putting him in violation of § 1927.

7